E. Jeffrey Banchero (SBN 93077)
ejb@bancherolaw.com
Scott R. Raber (SBN 194924)
sraber@bancherolaw.com
THE BANCHERO LAW FIRM LLP
Four Embarcadero Center, 17th Floor
San Francisco, California  94111
Telephone:     415.398.7000
Facsimile:      415.616.7000

John L. North (Admitted Pro Hac Vice)
jnorth@kasowitz.com
Jeffrey J. Toney (Admitted Pro Hac Vice)
jtoney@kasowitz.com
Laura Fahey Fritts (Admitted Pro Hac Vice)
lfritts@kasowitz.com
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1360 Peachtree Street, N.E., Suite 1150
Atlanta, GA 30309
Telephone:     404.260.6080
Facsimile:      404.260.6081

Attorneys for Defendants,
Watson Pharmaceuticals, Inc.,
Watson Laboratories, Inc.—Florida,
Watson Pharma, Inc., and Anda, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHIRE LLC, SUPERNUS PHARMACEUTICALS, INC., AMY F.T. ARNSTEN, PH.D., PASKO RAKIC, M.D., and ROBERT D. HUNT, M.D.,<br><br>Plaintiffs,<br><br>v.<br><br>IMPAX LABORATORIES, INC., WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC.—FLORIDA, WATSON PHARMA, INC., and ANDA, INC.,<br><br>Defendants. | Case No. 10-CV-05467-RS<br><br>DEFENDANTS WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC.—FLORIDA, WATSON PHARMA, INC., AND ANDA INC.'S SUPPLEMENTAL BRIEF REGARDING *THERASENSE, INC. V. BECTON, DICKINSON & CO.* |

**WATSON DEFENDANTS' SUPPLEMENTAL BRIEF**

**REGARDING *THERASENSE, INC. V. BECTON, DICKINSON & CO.***

## I. INTRODUCTION

On May 25, 2011, the Court of Appeals for the Federal Circuit issued an *en banc* opinion in *Therasense, Inc. v. Becton, Dickinson & Co.*, No. 2008-1511 (Fed. Cir. May 25, 2011) establishing new standards for proving inequitable conduct claims. During the June 2, 2011 Case Management Conference, the Court granted the parties leave to file a supplemental brief regarding the impact of the Federal Circuit's holding in *Therasense* on the pending motion to dismiss Watson Defendants' inequitable conduct defense and Watson-Florida's inequitable conduct counterclaim. As discussed below, Watson Defendants respectfully submit that, even in light of the standards established in *Therasense*, Watson Defendants sufficiently plead defenses and counterclaims for inequitable conduct. Watson Defendants respectfully request that the Court deny Shire's motion to dismiss.

## II. ARGUMENT

### A. The Federal Circuit's Holding in *Therasense*

Inequitable conduct is a judge-made equitable defense to patent infringement that originated from the common law doctrine of unclean hands. *Id.* slip op. at 15. To prevail on an inequitable conduct defense, an accused infringer must prove that the patent applicant misrepresented or omitted material information with the specific intent to deceive the Patent and Trademark Office ("PTO"). *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). The accused infringer must prove both elements—materiality and intent to deceive—by clear and convincing evidence. *Id.* If the accused infringer satisfies this burden, then the district court must weigh the equities in the case and determine whether the applicant's conduct before the PTO warrants a finding of inequitable conduct. *Id.* The only available remedy for a finding of inequitable conduct is the district court rendering the entire patent unenforceable. *Id.*

In *Therasense*, the Federal Circuit granted an appellant's petition for rehearing en banc to address what the court found to be "problems created by the expansion and overuse of the inequitable conduct doctrine." Slip op. at 15. In issuing its opinion, the court announced that it was

1  "tighten[ing] the standards for finding both intent and materiality in order to redirect a doctrine that
2  has been overused to the detriment of the public." *Id.* 24.

3  Pertinent to the matter pending before this Court, the Federal Circuit began by reaffirming
4  that to prevail on an inequitable conduct claim, an accused infringer must prove that the patentee
5  acted with the specific intent to deceive the PTO. *Id.* 24.  The court also reaffirmed that showing
6  that a misrepresentation or omission amounts to gross negligence or negligence under a "should have
7  known" standard cannot satisfy the intent requirement. *Id.*  Instead, in cases involving omissions of
8  a prior art reference, the Federal Circuit held that the accused infringer must prove by clear and
9  convincing evidence that the applicant knew of the reference, knew that it was material, and made a
10 deliberate decision to withhold it. *Id.*

11 Acknowledging that direct evidence of deceptive intent is rare, the Federal Circuit reaffirmed
12 that a court may infer intent from indirect and circumstantial evidence. *Id.*  To satisfy the clear and
13 convincing standard, the specific intent to deceive must be "the single most reasonable inference
14 able to be drawn from the evidence." *Id*. (quoting *Star Scientific*, 537 F.3d at 1366).  If multiple
15 inferences may be drawn from the evidence, intent to deceive cannot be found. *Id.* at 26.  Only
16 when the party alleging inequitable conduct has proven a threshold level of intent to deceive by clear
17 and convincing evidence is the patentee obligated to offer a good faith explanation.

18 In addressing the materiality element, the Federal Circuit explicitly declined to adopt the
19 definition of materiality provided in PTO Rule 56. *Id.* at 32.  Instead, the court held that to satisfy
20 the materiality standard, the accused infringer must demonstrate "but-for materiality." *Id.* at 27.
21 With respect to undisclosed prior art, the court held such prior art is "but-for material" if the PTO
22 would not have allowed a claim had it been aware of the undisclosed material. *Id*.  In making the
23 patentability determination, the Federal Circuit instructed that a court should apply the
24 preponderance of the evidence standard and give claims their broadest reasonable construction. *Id*.
25 at 28.

26 The Federal Circuit established one critical exception to the "but-for materiality" standard for
27 cases involving affirmative egregious misconduct, which is applicable here.  "When the patentee has
28 engaged in affirmative acts of egregious misconduct, *such as the filing of an unmistakably false*

*affidavit*, the misconduct is material." *Id.* at 29 (emphasis added). The court reasoned that "a patentee is unlikely to go to great lengths to deceive the PTO with a falsehood unless it believes that the falsehood will affect issuance of the patent." *Id.* The Federal Circuit offered that this exception, which punishes affirmative egregious acts without penalizing the failure to disclose information that would not have changed the issuance decision, strikes a necessary balance between encouraging honesty before the PTO and preventing unfounded accusations of inequitable conduct." *Id.* at 30.

### B.  *Therasense* Did Not Change Pleading Standards Set Forth in *Exergen*

*Therasense*, while clarifying the substantive proof requirements for an inequitable conduct claim, did not change the pleading standard for claims of inequitable conduct previously set forth in *Exergen Corp. v. Wal-Mart Store, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009). There, the Federal Circuit held that an accused infringer must plead facts regarding the who, what, when, why and how of the inequitable conduct. *Id.* at 1328-29. The *Exergen* pleading standards are not addressed, nor is the case mentioned at all, by the majority in *Therasense*. Thus, *Exergen* continues to be the single authority for pleading requirements in inequitable conduct cases.

### C.  Watson Has Satisfied the *Exergen* Pleading Standard

Watson Defendants' allegations satisfy the pleading requirements of *Exergen* for the reasons stated in Watson Defendants' Response in Opposition to Plaintiffs' Motion to Dismiss [84] and as summarized below. Watson Defendants selectively raised inequitable conduct against only one of the three patents at issue.

Watson Defendants' inequitable conduct allegations pertain to the '290 patentee's failure to disclose key information regarding two prior art references—the Chappell poster and the Hunt poster. In compliance with *Exergen*, Watson Defendants properly allege the who, what, when, why, and how elements of inequitable conduct in their Answer and Watson-Florida's Counterclaims. [54].

- Who: For the Chappell poster, Amy Arnsten. [*Id.* at Countercl. ¶ 18.] For the Hunt Poster, Amy Arnsten and Robert Hunt. [*Id.*]
- What: Failure to disclose the proper date the Chappell Poster was made publicly available. [*Id.* at Countercl. ¶¶ 18-19.] Failure to disclose the existence of the Hunt Poster. [*Id.*]

1
2
3
4
5

- Why: The date the Chappell Poster was made available to the public is material because it teaches the use of guanfacine claimed in the '290 patent and was available over one year before the patentees filed the '290 application. [*Id.* at Countercl. ¶ 19.] The existence of the Hunt Poster is material because it shows the inventors made aspects of their invention public over one year before the patentees filed the '290 patent. [*Id.*]

6
7
8
9

- Where: For the Chappell Poster, the inequitable conduct was committed when the declarations with a false date were submitted to the PTO, which is detailed in the "what" section above. [*Id.* at Countercl. ¶¶ 18-19.] For Hunt, the allegations are premised on a failure to disclose the reference, so there is no document for Watson Defendants to identify.

10
11
12
13

- How: For the Chappell Poster, applying the earlier publication date makes the reference prior art that anticipates the claims of the '290 patent. [*Id.* at Countercl. ¶19.] For the Hunt Poster, the reference is material because it shows that the inventors disclosed aspects of their invention over a year before they filed the '290 application. [*Id.*]

14 Watson Defendants' pleading also satisfies the substantive elements of inequitable conduct
15 articulated in *Therasense*. Watson Defendants allege that had the correct publication date of the
16 Chappell poster been disclosed to the PTO, the application "would have been anticipated or rendered
17 obvious the claims of the '290 patent." [*Id.* at Countercl. ¶ 19.] Watson Defendants also allege the
18 Hunt poster's materiality, pointing to the fact that it discloses "an earlier publication date by the
19 inventors of certain aspects of their invention," sufficient to anticipate the '290 patent. [*Id.*] Watson
20 Defendants therefore set forth a "but-for materiality" argument in their original pleading. Moreover,
21 because the patentees filed a false declaration with the PTO regarding the Chappell poster, the
22 patentees' egregious misconduct exempts Watson Defendants from having to meet the elevated
23 materiality standard. *Therasense*, at 29-30.
24 Watson Defendants also plead that the patentee acted with intent to deceive the PTO.
25 Watson Defendants plead intent on "information and belief," which is proper given that no discovery
26 has taken place. [54 at Countercl. ¶ 20.] *Exergen* allows such a pleading "under Rule 9(b) when
27 essential information lies uniquely within another party's control, but only if the pleading sets forth
28 the specific facts upon which the belief is reasonably based." 575 F.3d at 1330.

4

Here, the essential information at issue regarding intent lies squarely within the patentees' control. Applying the teachings in *Exergen*, Watson Defendants' Answer and Counterclaim properly allege intent to deceive by pleading it upon "information and belief" and setting forth facts that, if proven, are sufficient to show that the patentees knew of the reference, knew its contents were publicly available over one year before the application was filed, and intended to deceive the PTO by choosing to submit a declaration with a false publication date. [54 at Countercl. ¶ 20.] "A district court is permitted to make all those reasonable inferences that are plausible and that flow[] logically from the facts alleged . . . ." *Exergen*, 575 F.3d at 1330. A court "must presume all factual allegations of the [pleading] to be true and draw all reasonable inferences in favor of the nonmoving party" when evaluating a motion to dismiss. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

Watson Defendants have pled more than sufficient facts for the Court to infer that the patentee acted with an intent to deceive the PTO. Watson Defendants need not *prove*, at this stage of the litigation, that the specific intent to deceive is the single most reasonable inference able to be drawn. Watson Defendants should be permitted to move forward with discovery on inequitable conduct. Plaintiffs then can test the sufficiency of the proof at summary judgment or trial.

## III. CONCLUSION

Watson Defendants contend that their Answer satisfies the pleading requirement set forth in *Exergen* and the substantive elements set forth in *Therasense*. Watson Defendants therefore respectfully request that the Court deny the Plaintiffs' motion to dismiss Watson Defendants' inequitable conduct defense and counterclaim.

Dated: June 9, 2011                    THE BANCHERO LAW FIRM LLP


                                       By:   /s/    Scott R. Raber
                                             E. Jeffrey Banchero
                                             Scott R. Raber
                                             Attorneys for Defendants,
                                             Watson Pharmaceuticals, Inc., Watson
                                             Laboratories, Inc.—Florida, Watson Pharma,
                                             Inc., and Anda, Inc.


Dated:  June 9, 2011                   KASOWITZ, BENSON, TORRES & FRIEDMAN LLP


                                       By:   /s/    Laura Fahey Fritts
                                             John L. North (Admitted Pro Hac Vice)
                                             Jeffrey J. Toney (Admitted Pro Hac Vice)
                                             Laura Fahey Fritts (Admitted Pro Hac Vice)
                                             Attorneys for Defendants,
                                             Watson Pharmaceuticals, Inc., Watson
                                             Laboratories, Inc.—Florida, Watson Pharma,
                                             Inc., and Anda, Inc.