MCDERMOTT WILL & EMERY LLP
WILLIAM G. GAEDE III (136184)
wgaede@mwe.com
275 Middlefield Road, Suite 100
Menlo Park, CA  94025-4004
Telephone:     +1 650 815 7400
Facsimile:     +1 650 815 7401

MCDERMOTT WILL & EMERY LLP
JOSEPH R. ROBINSON (*Pro Hac Vice*)
jrobinson@mwe.com
HEATHER MOREHOUSE ETTINGER (*Pro Hac Vice*)
hettinger@mwe.com
340 Madison Avenue
New York, NY 10173
Telephone:     (212) 547-5509
Facsimile:     (212) 547-5444

Attorneys for *Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHIRE LLC, SUPERNUS PHARMACEUTICALS, INC., AMY F.T. ARNSTEN, PH.D., PASKO RAKIC, M.D., and ROBERT D. HUNT, M.D.,<br><br>Plaintiffs,<br><br>v.<br><br>IMPAX LABORATORIES, INC., WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC.–FLORIDA, WATSON PHARMA, INC., and ANDA, INC.,<br><br>Defendants. | CASE NO.  10-CV-05467 RS<br><br>**SUR-REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS AND/OR STRIKE WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC.–FLORIDA, WATSON PHARMA, INC., AND ANDA, INC.'S AFFIRMATIVE DEFENSES, WATSON LABORATORIES, INC.–FLORIDA'S COUNTERCLAIMS,  AND WATSON PHARMACEUTICALS, INC., WATSON PHARMA INC. AND ANDA, INC.'S DENIAL OF SUBJECT MATTER JURISDICTION**<br><br>Argued:     April 14, 2011<br>Time:       1:30 p.m.<br>Courtroom 3, 17th Floor<br><br>**Honorable Richard Seeborg** |

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

DM_US 28918593-1.085199.0893

SUR-REPLY TO M/DISMISS WATSON DEFTS'
CNTRCLAIMS, AFFIRM. DEFS & JURISDICTION DENIAL
CASE NO. 10-CV-5467 RS

**WATSON FAILS TO PLEAD INTENT OR MATERIALITY UNDER *THERASENSE***

The Court granted leave to file sur-responses directed to *Therasense, Inc. v. Becton, Dickinson and Co.*, 2011 WL 2028255 (Fed. Cir. 2011) (*en banc*). *Therasense* has significantly raised the burden of pleading inequitable conduct by dispensing with the sliding intent/materiality scale and by setting a "but-for" materiality standard.

Plaintiffs moved to dismiss/strike, *inter alia*, the Watson Defendants' inequitable conduct affirmative defense (Third Defense) and Watson-Florida's inequitable conduct counterclaim (Counterclaim Three). Watson Defendants' Answer, Shire Motion to Dismiss. Inequitable conduct has two elements – materiality and intent to deceive – and each must be pleaded with particularity. Fed. R. Civ. P. 9(b). Plaintiffs' relied upon *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) to show that this defense and counterclaim were not properly pleaded. *Therasense* makes this even clearer.

The well-founded premise of the *Therasense en banc* decision is that inequitable conduct allegations are a plague on the courts and the entire patent system as they are "routinely brought on 'the slenderest of grounds.'" *Therasense,* 2011 WL 2028255 at 9 (citation omitted). Inequitable conduct charges have become a common tactic (*i.e.*, in 80% of cases) that is overplayed "and is cluttering up the patent system." *Id.* at 8 (citation omitted). The Federal Circuit even compared the remedy for inequitable conduct to the atomic bomb since "[u]nlike validity defenses, which are claim specific …, inequitable conduct regarding any single claim renders the entire patent unenforceable." *Id.*

*Therasense* is the Federal Circuit's remedy to the abuse of the low standard of inequitable conduct that has resulted in the doctrine "embrac[ing] a broader scope of misconduct, including not only egregious affirmative acts of misconduct intended to deceive both the PTO and the courts but also the mere non-disclosure of information to the PTO." *Id.* at 6. The *Therasense en banc* court, in response to this abuse, tightened the two elements of an inequitable conduct charge. Present Defendants' inequitable conduct charges here highlight the abuse that *Therasense* is meant to curb. The present inequitable conduct charges should be dismissed.

Previously, intent was evaluated on a sliding scale; the more material the information in dispute, the lower the level of intent necessary. However, this "conflated, and diluted, the standards for

both intent and materiality." *Id.* at 7. It discouraged settlement, deflected attention from the merits of the real issues of validity and infringement, and increased "'the complexity, duration and cost of patent infringement litigation that is already notorious for its complexity and high cost.'" *Id.*

There is no sliding scale any longer. "Intent and materiality are separate requirements," and a court must evaluate intent independent of materiality. *Id.* at 10 (citation omitted). Furthermore, "that an applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.* "'[T]he fact that information later found material was not disclosed cannot, by itself, satisfy the deceptive intent element of inequitable conduct.'" *Id.* (citation omitted). "[W]hen there are multiple reasonable inferences that may be drawn" there is no intent to deceive. *Id.* "The absence of a good faith explanation for withholding a material reference does not, by itself, prove intent to deceive." *Id.*

The Federal Circuit also rejected, in the litigation context, 37 C.F.R. §1.56's lower standard of materiality and, instead, reset the standard to assure that inequitable conduct charges do not continue to proliferate patent litigation. *Id.* at 11. The materiality required for a litigable inequitable conduct claim is now "but-for" materiality. *Id.* at 11, 14-15. "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a [patent] claim had it been aware of the undisclosed prior art." *Id.* at 11. "Because neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct, claims of inequitable conduct that are based on such omissions require proof of but-for materiality." *Id. at 12*.

*Therasense* involved a patent claiming a disposable blood glucose test strip that included electrochemical sensors. The claim required the absence of "an intervening membrane or other whole blood filtering member." *Id.* at 1. The prior art relied upon by the *Therasense* defendants generally used a diffusion-limiting membrane to control the influx of glucose and to avoid fouling of the electrode by red blood cells found in whole blood. *Id.* at 10.

The patent-in-suit had been repeatedly rejected during prosecution over a prior art patent also owned by the plaintiff that stated, "Optionally, but preferably when being used on live blood [*i.e.*, the whole blood in a body] a protective membrane surrounds both the enzyme and the mediator layers,

1  permeable to water and glucose." *Id.* at 3. The U.S. Examiner of the patent-in-suit requested an
2  affidavit to show that the prior art required a membrane, and the plaintiff provided one from its
3  Director of R&D stating that one skilled in the art would not read the above-quoted lines from its prior
4  art patent to teach that the use of a protective membrane is optional or merely preferred. *Id.* at 2. The
5  applicants also argued the same. *Id.*. However, several years earlier, while prosecuting the European
6  counterpart of its prior art patent, the plaintiff made representations to the European Patent Office
7  ("EPO") that the prior art patent made it unequivocally clear that the protective membrane in this EP
8  counterpart was optional, not required. *Id.* at 2-3.

9  The *Therasense* district court held that the patent-in-suit was unenforceable due to inequitable
10 conduct because the plaintiff did not disclose to the USPTO its EPO briefs about its prior art patent. *Id.*
11 at 3. The plaintiff appealed, and the Federal Circuit panel affirmed, with a single dissent, the
12 unenforceability. *Id.* at 4. "Recognizing the problems created by the expansion and overuse of the
13 inequitable conduct doctrine, [the Federal Circuit] granted [the plaintiff's] petition for rehearing en
14 banc and vacated the judgment of the panel." *Id.* The Federal Circuit *en banc* vacated the district
15 court's inequitable conduct judgment and remanded for further proceedings consistent with the
16 *Therasense* decision. *Id.*

17 Fed. R. Civ. P. 9(b) requires that claims involving fraud, such as inequitable conduct, must be
18 pleaded with particularity. The act about which the Watson Defendants, and particularly Watson-
19 Florida, complain is the alleged failure to cite two posters – the Chappell poster and the Hunt poster.
20 Watson Defendants' Answer, Third Defense, pp. 20-21.

21 Regarding intent and the Chappell poster, Counterclaim Two concludes, upon information and
22 belief, that Plaintiff Dr. Arnsten "knew - but failed to disclose – that the Chappell poster was publicly
23 available before the dates set forth in her declarations" and that "[i]n light of the patentee(s) knowledge
24 and importance of the poster presentation date[], the failure of Dr. Arnsten and others associated with
25 the prosecution of the '290 patent to disclose the earlier publication date of the Chappell poster … is
26 evidence of an intent to deceive and/or withhold material information from the Examiner during the
27 prosecution of the '290 patent." *Id.* at Counterclaim Two, ¶20. First, the Watson Defendants never
28 place Dr. Arnsten and the Chappell poster together during its alleged display. Nothing is pleaded from

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1  which one can infer that Dr. Arnsten knew of the alleged display before the date in her declaration.
2  This is purely speculation. "'[T]he fact that information later found material was not disclosed cannot,
3  by itself, satisfy the deceptive intent element of inequitable conduct.'" *Therasense,* 2011 WL 2028255
4  at 10 (citation omitted). Second, there is no sliding scale of intent, and any alleged degree of
5  materiality of the Chappell poster or its alleged date is irrelevant to intent. *See id.* Third, without facts,
6  the Court cannot determine whether an inference of intent is proper under the *Therasense* rule that
7  "when there are multiple reasonable inferences that may be drawn …" there is no intent to deceive. *Id.*

8  Regarding intent and the Hunt poster, Counterclaim Two concludes, upon information and
9  belief, that Plaintiff Dr. Arnsten "knew of - but failed to disclose – the Hunt poster presented at the
10 same conference," "Dr. Arnsten knew or should have known about the Hunt poster … since the
11 Chappell poster refers to it, and this disclosure should have informed Dr. Arnsten of the concurrent
12 presentations," and "[i]n light of the patentee(s) knowledge and importance of the poster presentation
13 date[], the failure of Dr. Arnsten and others associated with the prosecution of the '290 patent to
14 disclose the earlier publication date of … the Hunt poster is evidence of an intent to deceive and/or
15 withhold material information from the Examiner during the prosecution of the '290 patent." Watson
16 Defendants' Answer, Counterclaim Two, ¶ 20. First, "that an applicant knew of a reference, should
17 have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to
18 deceive." *Therasense*, 2011 WL 2028255 at 10 (citations omitted). Next, the Watson Defendants infer
19 knowledge of the alleged presentation of the Hunt poster from its alleged citation in the Chappell
20 poster or from Dr. Arnsten's improperly inferred knowledge of the Chappell poster. Inference upon
21 inference is far beyond *Therasense* intent. Furthermore, there are alternative inferences. Generally,
22 publications do not include copies of each citation they reference. It stretches the imagination to plead
23 that the citation in the Chappell poster made the Hunt poster publicly available. Additionally, Dr.
24 Arnsten may have been unaware where, when, and whether the poster was actually submitted,
25 accepted, or presented; she was not its only author. Therefore, inferring intent is improper. *See*
26 *Therasense*, 2011 WL 2028255 at 10. Finally, without a sliding scale, any materiality of the Hunt
27 poster or its alleged date is irrelevant to pleading intent. *See id*.

28 Regarding materiality of the Chappell poster, Defendants allege only that "[t]he earlier

publication date of the Chappell poster makes it prior art that would have anticipated or rendered obvious the claim of the '290 patent." Watson Defendants' Answer, Counterclaim Two, ¶ 19. The Watson Defendants do not apply the Chappell poster to any '290 patent claim, nor do they allege that the Chappell poster disclosed '290 patent claim limitations about the absence of excessive sedation or the recited dosages of drug. Defendants have simply not pleaded with any particularity how an Examiner would have applied the Chappell poster or why the PTO would not have allowed each claim of the '290 patent had it been aware of the Chappell poster, *i.e.*, the but-for standard of materiality.

The materiality allegations in Counterclaim Two regarding the Hunt poster are even more nebulous. Defendants merely plead that "[t]he Hunt poster is material information that should have been disclosed to the examiner of the '290 patent because it relates to an earlier publication date by the inventors of certain aspects of their invention." *Id*. at Counterclaim Two, ¶19. Again, Defendants have not pleaded with any particularity how an Examiner would have applied the Hunt poster or why the PTO would not have allowed each claim of the '290 patent had it been aware of the Hunt poster, *i.e.*, the but-for standard of materiality.

Finally, Defendants pleading that "[d]ue to the patentee(s)' failure to disclose the Chappell poster and the Hunt poster, they are guilty of inequitable conduct rendering the '290 patent unenforceable" is precisely the vacant type of pleading that was condemned by *Therasense* as a plague. *Id*. at Counterclaim Two, ¶ 21. The Federal Circuit clearly held that mere failure to disclose a reference does not satisfy the intent or materiality requirements of inequitable conduct. *See Therasense*, 2011 WL 2028255 at 10. Defendants' omnibus inequitable conduct atomic bomb needed to be more targeted to survive Plaintiffs' motion to dismiss/strike.

For the stated above and in Plaintiffs' supporting memoranda, Watson Pharmaceuticals, Inc., Watson Laboratories, Inc.–Florida, Watson Pharma, Inc., and Anda, Inc.'s affirmative defenses, Watson Laboratories, Inc.–Florida's counterclaims, and Watson Pharmaceuticals, Inc., Watson Pharma Inc. and Anda, Inc.'s denial of subject matter jurisdiction should be dismissed and/or stricken.

DATED:     June 9, 2011                    MCDERMOTT WILL & EMERY LLP

                                           By:     */s/ William G. Gaede, III*
                                                   William G. Gaede, III